UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

VICTOR B.,[1]

                                            Plaintiff,              Case # 20-cv-1154-FPG

v.                                                                      DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,
                                        Defendant.
_____

## INTRODUCTION

On December 29, 2017, Plaintiff Victor B. protectively applied for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"). Tr.[2] 15. The Social Security Administration (the "SSA") denied his claim and Plaintiff appeared with counsel at a hearing before Administrative Law Judge Ellen P. Bush on November 22, 2019. Tr. 48. At the hearing, Plaintiff and a vocational expert testified. On February 5, 2020, the ALJ issued an unfavorable decision. Tr. 12. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the SSA. Tr. 1. Plaintiff then appealed to this Court.[3] ECF No. 1.

The parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 10, 11. For the reasons that follow, Plaintiff's motion is DENIED, the Commissioner's motion is GRANTED, and the ALJ's decision is AFFIRMED.

## LEGAL STANDARD

### I. District Court Review

When it reviews a final decision of the SSA, it is not the Court's function to "determine *de*

---

[1] In order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff using only his first name and last initial in accordance with this Court's Standing Order issued November 18, 2020.

[2] "Tr." refers to the administrative record in this matter. ECF No. 9.

[3] The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

*novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. §§ 405(g), 1383(c)(3)) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

**II.     Disability Determination**

To determine whether a claimant is disabled within the meaning of the Act, an ALJ follows a five-step sequential evaluation: the ALJ must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his or her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work; and (5) whether the claimant's RFC permits him or her to perform alternative substantial gainful work which exists in the national economy in light of her age, education, and work experience. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. § 404.1520.

## DISCUSSION

### I. The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits using the process described above. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 29, 2017, the alleged onset date. Tr. 17. At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative joint disease of the left knee, degenerative joint disease of the lumbar and cervical spine, and ulcerative colitis, status post total colectomy. Tr. 17. The ALJ also found that Plaintiff had the following non-severe impairments: hypertension, gastroesophageal reflux disease (GERD), hyperlipidemia, and chronic obstructive pulmonary disease (COPD). Tr. 18.

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments. Tr. 18. The ALJ determined that Plaintiff maintained the RFC to perform light work. Tr. 19. However, the ALJ found that Plaintiff had exertional limitations including that Plaintiff would need easy or frequent access to a bathroom. Tr. 19.

At step four, the ALJ found that Plaintiff could perform past work as a sales representative, manufacturer representative, and a small business owner. Tr. 22. At step five, the ALJ concluded that there were jobs that existed in the economy that Plaintiff could perform. Tr. 23. The vocational expert testified that the number of jobs available would reduce by 50% to accommodate

the need for "easy" access to the bathroom. Tr. 23, 80. As such, the ALJ found that Plaintiff was not disabled.

**II.     Analysis**

Plaintiff takes issue with the ALJ's decision on the basis that: (1) the ALJ erred in weighing the medical sources, and (2) the ALJ erred in assessing Plaintiff's credibility by not considering the combination of Plaintiff's impairments. *See* ECF No. 10-1 at 10-17. The Court disagrees.

Plaintiff asserts that the ALJ erred in giving more weight to nonexamining sources than examining sources. "When determining a claimant's RFC, an ALJ must evaluate every medical opinion received, '[r]egardless of its source.'" *Anna T. v. Comm'r of Soc. Sec.*, No. 19-CV-1524-LJV, 2021 WL 810014, at *2 (W.D.N.Y. March 3, 2021) (citing 20 C.F.R. § 404.1527(c)). "[B]efore an ALJ may deny a claimant's application, the ALJ must confront the evidence in the claimant's favor and explain why it is was rejected." *Anna T.*, 2021 WL 810014 at *2.

"The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded." *Raymond M. v. Comm'r of Soc. Sec.*, No. 5:19-CV-1313 (ATB), 2021 WL 706645, at *4 (N.D.N.Y. Feb. 22, 2021). "According to the new regulations, the Commissioner 'will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." *Raymond M.*, 2021 WL 706645, at *4 (citing *Revisions to Rules Regarding the Evaluation of Medical Evidence ("Revisions to Rules")*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c(a), 416.920c(a)). "Instead, the Commissioner must consider all medical opinions and 'evaluate their persuasiveness' based on the following five factors: supportability; consistency; relationship with the claimant;

specialization; and 'other factors.'" *Raymond M.*, 2021 WL 706645, at *4 (citing 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c)).

Under the new regulations, "the ALJ must still 'articulate how [he or she] considered the medical opinions' and 'how persuasive [he or she] find[s] all of the medical opinions.'" *Id*. (citing 20 C.F.R. §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1)). However, the new regulations "eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion." *Id*. Of the five factors the ALJ is to consider in evaluating the persuasiveness of medical opinions, consistency and supportability are "the most important." *Raymond M.*, 2021 WL 706645, at *4 (citing *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853). "[A] medical source may have a better understanding of your impairments(s) if he or she examines you than if the medical course only reviews evidence in your folder." 20 C.F.R. § 404.1520c(c)(3)(v). In addition, the new regulations provide that the ALJ will:

> "[N]ot defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources. When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source . . . ."

20 C.F.R. § 404.1520c(a).

In this case, the ALJ properly credited the opinions from Plaintiff's nonexamining medical sources over an opinion from an examining source. The new regulations place an emphasis on supportability and consistency, rather than the examining relationship with Plaintiff. *See* 20 C.F.R. § 404.1520c(b)(2). The ALJ concluded that James Lawrence, M.D.—a State Agency Medical Consultant—and Jay Shaw, M.D.—a medical consultant—produced medical opinions that were consistent with each other, the overall record, and with Plaintiff's ability to perform light work. Tr. 22.

Dr. Lawrence reviewed Plaintiff's medical record and noted that Plaintiff walked with a normal gait, walked on heels and toes without difficulty, and his range of motion was within normal limitations with the muscle strength of 5/5 bilaterally. Tr. 509. Dr. Lawrence then noted that Plaintiff's ulcerative colitis flares up when he has 6-7 bowel movements a day and that his medication only provides partial relief. Tr. 509.

Dr. Shaw also reviewed Plaintiff's medical record and opined that Plaintiff can occasionally lift twenty pounds and frequently lift ten pounds. Tr. 515. Dr. Shaw then opined that Plaintiff could stand, walk, and/or sit for about six hours in a normal eight-hour workday. Tr. 515. Dr. Shaw also noted that Plaintiff showed normal gait, and ambulation, and had normal strength and sensory testing throughout the record. Tr. 521. Finally, Dr. Shaw noted that Plaintiff had normal physical examinations, little evidence of functional limitations, and that Plaintiff's allegations of back pain and colitis are partially consistent with the evidence in the record. Tr. 521.

The ALJ reasonably concluded that the opinions from Dr. Lawrence and Dr. Shaw were supported and consistent with the record evidence.[4] *See* 20 C.F.R. § 404.1520c(b)(2). After Plaintiff's fusion back surgery, both Dr. Lawrence and Dr. Shaw reviewed Plaintiff's record and found moderate findings for Plaintiff's back pain and that he only needed pain medication before playing golf. Tr. 309 320, 424, 523. Both Drs. Lawrence and Shaw cite to normal physical examinations and colitis symptoms. Tr. 509, 521. The record after Plaintiff's fusion surgery is

---

[4] Plaintiff also suggests that both Dr. Lawrence and Dr. Shaw misread an MRI result from November 2, 2017, regarding Plaintiff's back. ECF No. 10-1 at 14. These opinions were consistent with moderate limitation findings in Plaintiff's back and were consistent with the entirety of the record. Plaintiff claims that both medical opinions did not show Plaintiff's herniated discs. ECF No. 10-1 at 11, 12. However, both opinions show consistent moderate physical limitations in Plaintiff's back after his fusion surgery.

replete with reports of Plaintiff demonstrating full strength, normal sensations, and normal gait.[5] Tr. 425, 487, 523, 791, 798, 800.  The ALJ properly found Dr. Lawrence's and Dr. Shaw's opinions persuasive because their conclusions were consistent with the evidence described above.  *See* 20 C.F.R. § 404.1520c(b)(2).

Plaintiff next contends that the ALJ did not provide good reasons for discounting the opinion of Jennifer Wojcik—Plaintiff's treating Physician's Assistant.  *See* ECF No. 10-1 at 14; *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999).  Under the 2017 regulations, PA Wojcik' treating source opinion is, "not entitled to any deference or specific evidentiary weight." *Danielle S. v. Comm'r of Soc. Sec.*, No. 1:20-cv-1013-DB, 2021 WL 2227913, at *5 (W.D.N.Y. June 2, 2021) ("[T]he Court finds that the ALJ properly concluded there was neither clinical nor diagnostic support for the restrictions identified by [treating source].").  PA Wojcik opined in November 2017 that Plaintiff would be able to work in a "less than sedentary physical capacity."  Tr. 539.  PA Wojcik also opined that Plaintiff could not lift over five pounds, he could not walk or sit for "extended periods," and he showed a decreased range of motion in his back.  Tr. 538.

However, given the evidence discussed above, the ALJ properly concluded that PA Wojcik's opinion was unsupported and inconsistent with the record evidence.  *See* 20 C.F.R. § 404.1520c(b)(2).  For example, in March 2018, Plaintiff reported "significant relief" in his back and leg pain.  Tr. 781.  In June 2018, Plaintiff reported lower back pain, but that he takes a pain pill before he golfs and maintains function "quite well."  Tr. 791.  While PA Wojcik did have an

---

[5] Plaintiff also claimed experiencing left knee pain for one and a half years during an August 2019 orthopedic appointment with Andrew Stoeckl, M.D. Tr. 679.  During this same visit with Dr. Stoeckl, Plaintiff received a left knee injection and showed tenderness with a limited range of motion in the knee.  Tr. 680.  The ALJ found that there was limited treatment in the record for Plaintiff's left knee.  Tr. 20.  At the November 2019 hearing, Plaintiff testified that his first time seeing a doctor for his knee was the August 2019 appointment with Dr. Stoeckl.  Tr. 65.  Plaintiff then went on to testify that his "knee just started to act up."  Tr. 65.  Plaintiff then said his surgery to have his knee replaced was February 2020.  Tr. 65.  The ALJ acknowledged that one of Plaintiff's severe impairments is degenerative disc disease in his left knee.  Tr. 17.  However, based on Plaintiff's testimony and moderate findings in the record for Plaintiff's left knee, the ALJ was correct in observing the lack of evidence in the record for ongoing knee pain.

examining relationship with Plaintiff, 20 C.F.R. § 404.1520c(c)(3)(v), her opinion was not consistent with the entirety of the record.

Plaintiff next asserts that the ALJ erred in assessing Plaintiff's credibility in relation to his impairments. ECF No. 10-1 at 14. The Court disagrees. The Commissioner will consider factors such as daily activities, precipitating and aggravating factors, treatment, and other factors concerning Plaintiff's functional limitations. *See* 20 C.F.R. § 404.1529 (c)(3)(i)-(vii).

For the reasons discussed above, the ALJ can reasonably rely on the objective evidence when discounting Plaintiff's subjective complaints. *See* 20 C.F.R. § 404.1529(c)(3). But Plaintiff's testimony was also internally inconsistent: He testified that he has to lay down three to four times in a day—depending on his activities—and cannot sit or stand for more than twenty minutes at a time. Tr. 67-68. However, when the ALJ asked why Plaintiff could not do his job anymore, Plaintiff responded, "I probably could, Your Honor. I would have to sit/stand. It's difficult to sit behind a desk all day." Tr. 67. Plaintiff also testified that he golfs a "couple times a week." Tr. 71; *see also Aponte v. Sec'y, Dep't of Health and Human Servs. of the U.S.*, 728 F.2d 588, 591 (2d Cir. 1984) ("If the Secretary's findings are supported by substantial evidence . . . the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain."). There is also evidence that Plaintiff was quite active during his conservative treatments for his back and leg pain. Tr. 523, 679 (reporting pain but maintaining ability to play golf); *see also Hart v. Comm'r of Soc. Sec.*, No. 19-cv-00042, 2020 WL 2525769, at *6 (W.D.N.Y. May 18, 2020) ("Plaintiff's argument that the activities noted by the ALJ, such as mowing, doing home repairs and golfing, do not show the ability to perform medium work is not persuasive."). Plaintiff further testified that the symptoms associated with his ulcerative colitis decreased after his total colectomy, stating that, "it was the best thing I ever did," and that he has "the quality of life again."

Tr. 62; *see also* 20 C.F.R. § 404.1529(c)(3)(ii) (ALJ may consider "frequency" and "intensity" of pain and other symptoms).

Finally, Plaintiff argues that the ALJ erred by not crediting Plaintiff's excellent work history. ECF No. 10-1 at 16. This argument is unavailing for two reasons. First, at the hearing, the ALJ highlighted Plaintiff's work history and commented on Plaintiff's "pretty good" earnings up until 2016. Tr. 57-59. This indicates that the ALJ did consider Plaintiff's earnings when she decided Plaintiff's case. Second, while "a good work history may be deemed probative of credibility, . . . it bears emphasizing that work history is just one of many factors that the ALJ is instructed to consider in weighing the credibility of claimant testimony." *Schaal*, 134 F.3d at 502. The fact that the ALJ did not specifically mention Plaintiff's strong work history in the decision "does not undermine the credibility assessment, given the substantial evidence supporting the ALJ's decision." *Wavercak v. Astrue*, 420 F. App'x 91, 94 (2d Cir. 2011) (summary order).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings, ECF No. 10, is DENIED, the Commissioner's motion for judgment on the pleadings, ECF No. 11, is GRANTED, and the complaint is DISMISSED WITH PREJUDICE. The Clerk of Court shall enter judgment and close this case.

IT IS SO ORDERED.

Dated: August 17, 2021
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York